IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Douglas C. Ramsey,                  )
                                    )
                                    )
        Plaintiff,                  ) Case No. 1:09-CV-207
                                    )
    vs.                             )
                                    )
Allstate Insurance Company,         )
                                    )
        Defendant.                  )

O R D E R

This matter is before the Court on Defendant Allstate
Insurance Company's Second Motion for Summary Judgment (Doc. No.
44) and Plaintiff Douglas C. Ramsey's Motion to Grant Judgment on
Count Five (Doc. No. 45).  For the reasons that follow,
Defendant's motion for summary judgment is well-taken and is
**GRANTED**; Plaintiff's motion to grant judgment on Count Five is
not well-taken and is **DENIED.**

I. Background

The material facts of this case are not in dispute and
can be briefly summarized.

Plaintiff Douglas C. Ramsey lived with his father,
Ralph Ramsey, in a house owned by his father.  The house was
insured against loss by fire under a policy Ralph purchased from
Defendant Allstate Insurance Company ("Allstate").  Ralph was the

1

name insured under the policy and paid the premiums to Allstate through Bank of America, who held a mortgage on the house. Since he lived in the house, Plaintiff was also considered an insured under the terms of the policy, but only through the end of the premium period following the death of the named insured.

Ralph passed away in August 2002. It is not disputed that Plaintiff did not notify Allstate of Ralph's death and that Allstate did not otherwise receive actual notice of Ralph's death. Plaintiff assumed the mortgage on the house and continued to make premium payments on Ralph's policy through Bank of America. Allstate, however, never issued a new policy in Plaintiff's name. A fire damaged the house in July 2008. Allstate took possession of the home, put Plaintiff's undamaged property in storage, and paid him $500 initially to cover expenses. See Ramsey v. Allstate Ins. Co., 416 Fed. Appx. 516, 518-19 (6th Cir. 2011). In the course of investigating Plaintiff's claim, Allstate learned for the first time of Ralph's death in 2002. Allstate, therefore, denied Plaintiff's claim for coverage on the grounds that he was not an insured under the terms of the policy.

Plaintiff originally sued Allstate for breach of the insurance contract, bad faith processing of his claim, and subrogation. After the close of discovery, the Court granted Allstate's motion for summary judgment on each of Plaintiff's

claims.  The Court ruled that Plaintiff ceased being an insured
under Ralph's policy at the end of the premium period following
Ralph's death.  The Court also found that Allstate did not have
actual notice of Ralph's death and that under Ohio law, Plaintiff
could not establish coverage under the policy through estoppel.
Because his breach of contract claim failed, Plaintiff's bad
faith claim failed as well.  Finally, the Court ruled that
Plaintiff failed to state a claim for subrogation since he had
not paid Allstate for any loss that Bank of America may have
sustained in the fire.  Id. at 11-15.  The Court, therefore,
entered judgment in Allstate's favor on each of Plaintiff's
claims.

On appeal by Plaintiff, the Sixth Circuit sustained
this Court's conclusion that there was no express contract for
insurance between Plaintiff and Allstate.  Ramsey, 416 Fed. Appx.
at 519.  The Court of Appeals, however, found that this Court had
failed to consider whether Allstate had constructive notice of
Ralph's death.  The Court of Appeals also found that the Court
failed to consider whether there was an implied-in-fact contract
for insurance between Plaintiff and Allstate.  The Court thought
that Allstate might have had constructive notice of Ralph's death
since his estate went through probate and title to the house was
transferred to Plaintiff.  Id. at 520.  The Court noted that
Allstate's actions after the fire, such as accepting premiums,

3

taking possession of the home and paying an advance in expenses to Plaintiff, might have created an implied-in-fact contract. Id. at 521. The Court, therefore, remanded the case for this Court "to consider in the first instance whether Allstate received constructive notice of Ralph's death estopping it from denying coverage, and whether there is an implied-in-fact contract to provide insurance coverage between the parties." Id. at 522.

## II. Plaintiff's Motion for Default Judgment

On remand from the Court of Appeals, the Court held a scheduling conference with the parties and established July 8, 2011 as the date for filing amended pleadings. Doc. No. 39. On July 7, 2011, Plaintiff filed an amended complaint which reasserted his original claims and added a fifth cause of action for constructive knowledge and implied-in-fact contract. Doc. No. 40. This was obviously done to bring the pleadings into conformity with the rulings of the Court of Appeals.

On July 14, 2011, Allstate moved to strike Counts One through Four of the amended complaint on the grounds that they were redundant and immaterial in light of the Court of Appeals' decision in Ramsey. The Court agreed and on August 23, 2011, granted Allstate's motion. Doc. No. 43. Allstate did not file an answer as to Count Five of the amended complaint but did file the instant motion for summary judgment on Count Five on

4

September 7, 2011.

      Plaintiff now moves for default judgment on Count Five on the grounds that Allstate failed to file a timely answer to that count of the complaint.  Allstate argues that Plaintiff has not been prejudiced by this omission and moves the Court for leave to file an answer out of time.

      Assuming without deciding that Plaintiff would be entitled to default judgment under these facts, the Court would nevertheless excuse Allstate from the default.  In <u>United Coin Meter v. Seaboard Coastline R.R.</u>, 705 F.2d 839 (6th Cir. 1983), the Court set forth the factors that the trial court should consider in deciding whether to set aside a default judgment: 1) whether the plaintiff will be prejudiced; 2) whether the defendant has a meritorious defense; and 3) whether culpable conduct of the defendant led to the default.  <u>Id.</u> at 845.  To the extent there was a default, all of these factors favor setting it aside.

      Plaintiff is not prejudiced by Allstate's failure to answer the amended complaint.  All of the issues to be considered by the Court and parties on remand were clearly framed by the Court of Appeals.  Plaintiff's amended complaint, therefore, was more or less superfluous.  Allstate has vigorously defended the case from the outset and it should have been fairly self-evident that Allstate would continue to deny liability under the new

theories advanced by the amended complaint.  Allstate promptly
moved for summary judgment on Count Five, even before Plaintiff
moved for default judgment.  Plaintiff could not have been
disadvantaged in any way the Court can discern by Allstate's
failure to file an answer to Count Five.

        As the Court discusses further below, Allstate does
have meritorious defenses to the new claims.

        Finally, there was no culpable conduct on the part of
Allstate.  As indicated, Plaintiff's amended complaint was
essentially a technical formality to tidy up the pleadings.
Allstate's failure to file an answer under these circumstances
can be considered no more than a venial sin.

        Accordingly, Plaintiff's motion for default judgment is
not well-taken and is **DENIED.**

### III. Allstate's Motion for Summary Judgment

#### A. Standard of Review

        Summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The evidence presented on a motion for summary judgment
is construed in the light most favorable to the non-moving party,
who is given the benefit of all favorable inferences that can be

drawn therefrom.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id.

        The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial."  First National Bank

7

<u>v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert. dismissed</u>, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).  According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Id.</u> at 323; <u>Anderson</u>, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make

8

that showing with significantly probative evidence.  <u>Id.</u>;
<u>Anderson</u>, 477 U.S. at 250.  Rule 56(e) requires the non-moving
party to go beyond the pleadings and designate "specific facts
showing that there is a genuine issue for trial."  <u>Id.</u>

Further, there is no express or implied requirement in
Rule 56 that the moving party support its motion with affidavits
or similar materials negating the opponent's claim.  <u>Id.</u>  Rule
56(a) and (b) provide that parties may move for summary judgment
"with or without supporting affidavits."  Accordingly, where the
non-moving party will bear the burden of proof at trial on a
dispositive issue, summary judgment may be appropriate based
solely on the pleadings, depositions, answers to interrogatories,
and admissions on file.

B. <u>Constructive Notice</u>

The Court of Appeals suggested that Allstate might have
had constructive notice of Ralph's death, and therefore be
estopped from denying coverage, because Ralph's estate was
probated and there was a transfer of title of the house to
Plaintiff.  In support of this position, Plaintiff has submitted
copies of the probate documents, the title transfer documents,
and obituary notices placed in the local newspapers.  Plaintiff
contends that the mere filing of these public records was
sufficient to put Allstate on constructive notice, regardless of
whether Allstate actually knew of them or read them.  The Court

finds, however, that Ohio would not charge Allstate with constructive notice of Ralph's death just by the mere filing and publication of these documents.

Absent evidence that Allstate read Ralph's obituary or some other notice, the mere publication of his death in the newspaper did not put Allstate on constructive notice of his death as a matter of law. In <u>In re Fahle's Estate</u>, 105 N.E.2d 429 (Ohio Ct. App. 1950), a creditor filed a claim against the decedent's estate more than four months after the appointment of the administrator.  The administrator argued that the creditor's claim was barred on the grounds that the creditor had notice of the decedent's death because the appointment of the administrator had been published in the newspaper.   The court of appeals disagreed, however, stating:

> constructive notice is that which the law regards as
> sufficient to give notice and is regarded as a
> substitute for actual notice or knowledge.  Actual
> notice may be (1) express or direct information, or (2)
> implied or inferred from the fact that the person had
> means of knowledge which he did not use.  For example,
> if a person reads a death notice in a newspaper or a
> notice of appointment of administrator in the legal
> news he would not have absolute or express notice, but
> he would have sufficient means of knowledge from which
> the trier of facts might infer actual notice.

<u>Id.</u> at 431.  In the syllabus, the court stated, "In the absence of evidence that a creditor of a decedent has read a notice of death or the appointment of an administrator of a decedent, proof of publication of such notice is insufficient to establish

'actual notice[.]'" <u>Id.</u> at 430, syl. 3.  In the case before it, the court affirmed the probate court's decision to allow the claim because there was no proof that the creditor had read the notice published in the newspaper.  <u>Id.</u> at 431.

In this case, as Allstate correctly argues, there is no evidence that any agent of Allstate read Ralph's obituaries such that Allstate can be charged with constructive notice of his death.  While the <u>Fahle's Estate</u> Court did not address the issue whether the court filings appointing the estate's administrator gave the creditor constructive notice of such appointment, the only logical conclusion is that absent someone from Allstate reading the probate documents, the mere filing of them is insufficient to provide constructive notice.  If the law were otherwise, then it seems apparent that the outcome of <u>Fahle's Estate</u> would have been different - the creditor would have been charged with notice of the appointment of the administrator upon the filing of the paperwork on the docket of the court.

Indeed, if Ohio were going to charge creditors with notice of the appointment of the administrator upon filing the papers in probate court, there would be no need to enact a requirement to publish notice of the appointment in the newspaper.  The obvious reason for the requirement is that persons with a specific interest in the decedent's estate are more likely to discover that an administrator has been appointed

by reading the newspaper.  It would be too burdensome to require creditors to march to the courthouse every day to search the probate records for the appointments of new estate administrators on the off-chance that one of them was related to one of their debtors.  Similarly, as Allstate accurately argues in its motion, a rule charging it with constructive notice of Ralph's death merely by the fact that his estate went through probate court would impose an enormous burden.  In order to protect its rights, every day, Allstate would have to review the probate court filings of every county in the state of Ohio and then compare those filings against a list of its policy holders on the off-chance that one of them might have died overnight.  It is plain to see the impracticability of such a rule, particularly when Plaintiff could easily have provided Allstate with actual notice of Ralph's death.  Had Plaintiff done so in a timely fashion, in all likelihood, Allstate would have issued a new policy issued in his own name.

For similar reasons, the Court concludes that Ohio would not have charged Allstate with constructive notice of Ralph's death simply because the title to the home was transferred to Plaintiff.  The Court could not find a case directly on point; however, a purchaser of land will not be charged with constructive notice of an encumbrance on the property unless the such encumbrance is recorded <u>and</u> is within

12

the purchaser's chain of title.  <u>Ohio Tpk. Comm'n v. Spellman</u>
<u>Outdoor Adver. Serv., LLC</u>, No. E-09-038, 2010 WL 1511707, at *5
(Ohio Ct. App. Apr. 16, 2010); <u>see</u> <u>also</u> <u>Wayne Bldg & Loan Co. v.</u>
<u>Yarborough</u>, 228 N.E.2d 841, 852-53 (Ohio 1967).  In other words,
Ohio does not charge a purchaser of land with constructive notice
of every recorded encumbrance on the land.  Rather, the purchaser
is only charged with constructive notice of those encumbrances
which fall within his chain of title.  It would be an
"intolerable burden" to require more.  <u>Ohio Tpk Comm'n</u>, 2010 WL
1511707, at *5.

     Since Ohio does not charge a purchaser of land with
constructive notice of every recorded encumbrance on the
property, it is improbable that Ohio would charge Allstate with
constructive notice of the transfer of the deed of the subject
property to Plaintiff merely because the transfer was publicly
filed and recorded.  Allstate had no interest in purchasing the
property and the Court cannot fathom any reason for Allstate to
have perused the public records to learn of the transfer of the
deed.  Similar to the analysis with respect to the probating of
Ralph's estate, charging Allstate with constructive notice of the
deed transfer merely because it was publicly recorded would
require Allstate to review every real estate transaction in every
county in the state and compare the parties involved in the
transaction with its database of customers.  If it would be an

"intolerable burden" to require a purchaser <u>with an interest in purchasing a specific parcel of land</u> to search the public record for encumbrances outside of his own chain of title, there are no adequate adjectives to describe the burden that would be imposed on an insurance company if it were required to review every real estate transaction in the state in order to avoid being charged with constructive notice that one of its insureds had transferred the title to land it had agreed to insure.  Such a rule would be patently unfair.

In arguing that Allstate had constructive notice of Ralph's death due to the probate court records and the recording of the deed transfer, Plaintiff cites <u>Security Trust Co. v. Ford</u>, 79 N.E. 474 (Ohio 1906) for the proposition that "a public record is constructive notice of what the record may properly contain[.]"  <u>Id.</u> at 477.  Applying this statement literally, which is what Plaintiff wants, <u>Ford</u> would charge every individual with constructive notice of every public record regardless of whether the individual had any interest at all in the proceeding or transaction.  The Court is persuaded, however, that <u>Ford</u> does not sweep as broadly as Plaintiff contends.

First, it is apparent this quotation from <u>Ford</u> is dicta.  The facts of the case are that some investors formed a corporation to manufacture and sell telephones, switchboards, and other electrical appliances.  The investors incorporated the

14

business in the State of West Virginia and filed the articles of
incorporation with the West Virginia Secretary of State, but its
principal place of business was in Putnam County, Ohio.  The
articles of incorporation authorized the company to issue capital
stock in the amount of $250,000.  The articles further stated
that the par value of the stock was $100 per share.  The articles
further provided, however, that the common stock should be sold
at 50% and be considered fully paid and assessable.  Under West
Virginia law at the time, a subscriber of common stock was liable
to the corporation's creditors up to the stock subscribed and
unpaid, but no more.  Stated another way, under West Virginia law
subscribers were liable to creditors up to the total par value of
the stock they purchased.  Id. at 474.

        In any event, the corporation sold all of its stock for
less than par value.  Later, the corporation filed for
bankruptcy.  The corporation's creditors sued the shareholders to
recover the unpaid amounts of their stock subscriptions.  In
defense, the shareholders argued that the corporation's articles
of incorporation were on file with the West Virginia Secretary of
State and that by examining the articles, the creditors would
have discovered that the shares were sold for less than par
value.  The shareholders argued that since the creditors had
constructive notice of the articles of incorporation due to their
filing with the Secretary of State, the creditors were estopped

15

from insisting on liability inconsistent with the articles of
incorporation.  Id. at 476-77.

The Supreme Court of Ohio, however, rejected the
shareholders' arguments.  Initially, noting that most of the
corporation's creditors were probably in Ohio, it doubted that
any of them actually traveled to West Virginia to examine the
articles of incorporation.  Id. at 477.  The Court then addressed
the shareholders' constructive notice argument:

> But it is urged that such articles filed in the office
> of the Secretary of State were in any event
> constructive notice to them.  Suppose that be so, of
> what are they notified?  We suppose the rule to be well
> established that a public record is constructive notice
> of what the record may properly contain, and that it is
> not constructive notice of that which is illegally
> placed in the article filed or recorded.  It would seem
> that the Secretary might well have refused to file or
> record the instrument.  But, however that may be, we
> are of opinion that the record is not notice to
> creditors of that which the incorporators were
> incompetent to ingraft upon the articles as affecting
> creditors.  In other words, persons dealing with this
> corporation had the right to assume that it had, in its
> incorporation, conformed to the laws of West Virginia,
> and it is not within the power of such corporation to
> limit the liability of a portion of its stockholders
> for the debts of the corporation by a provision in the
> articles, unauthorized at least as regards creditors;
> thus attempting to relieve such stockholders and
> leaving the trusting creditors to "hold the bag."

Id. at 477 (emphasis added)(internal citation omitted).  As can
be seen, the Ford Court only assumed that the shareholders'
argument that the public filing of the articles of incorporation
gave constructive notice of their contents was correct.  The true
basis for the result in the case, however, was that the

16

shareholders could not limit their liability to the corporation's creditors by agreeing to articles which conflicted with state law.  Whether the creditors had constructive notice of the articles of incorporation was immaterial to the outcome of the case and the Court's iteration of the general rule on constructive notice was dicta and not binding.  See Williams v. Ward, 246 N.E.2d 780, 781 n.1 (Ohio Ct. App. 1969)("Where the opinion of the Ohio Supreme Court contains statements not necessary to reach the actual decision and is not part of the syllabus, it is obiter dicta, and is not binding[.]").  Consequently, Plaintiff's reliance on Ford for the proposition that individuals are deemed to have constructive notice of all publicly filed records is inappropriate.

Moreover, to the extent that the Ford Court's statement on constructive notice is not dicta, it seems this rule has lapsed into desuetude or that Ford is limited to its own particular facts.  Westlaw's keycite function indicates that Ford has been cited in only one other Ohio case since 1906.  In Stewart v. Allen, No. 06CA0039, 2008 WL 918528 (Ohio Ct. App. Apr. 7, 2008), the plaintiff purchased a home but had continuous problems with the septic tank system and undertook a number of ultimately unsuccessful efforts to repair it.  Later, she sued the realtor for fraud for giving the county health department an altered copy of the septic system layout.  The court, however,

17

rejected the plaintiff's fraud claim because the unaltered plans were public records that she could have viewed at any time.  Id. at *4.  Because they were public records, the Stewart court charged the plaintiff with constructive notice of the plans.  An important distinction, however, is that in Stewart, the plaintiff knew that the septic tank plans were public records and she admitted that she did not seek them out.  Id.  In this case, however, Allstate could only be charged with constructive notice of the contents of the deed transfer if it in fact knew one had been filed.  There is no such evidence in this case.

Other than Stewart, no other Ohio court has cited the broad rule on constructive notice supposedly set forth in Ford.  Hence this Court's conclusion that Ford is sui generis or simply no longer states the law on constructive notice in Ohio.  Indeed, if Ford were still the law on constructive notice, the outcomes in a case like Fahle's Estate would have been different.

Accordingly, for all of the above reasons, the Court concludes that Allstate did not have constructive notice of Ralph Ramsey's death.  The mere filing of public records indicating that his estate went through probate and the transfer of the deed to Plaintiff were insufficient as a matter of law to put Allstate on constructive notice of Ralph's death.  Plaintiff has not adduced any evidence of any other facts which would have alerted Allstate to investigate further whether Ralph had died.

18

Therefore, Allstate's motion for summary judgment on the issue of constructive notice is well-taken and is **GRANTED.**

### C. Implied-in-Fact Contract

The Court concludes further that the record will not support a finding that the parties formed an implied-in-fact contract for insurance.  An implied-in-fact contract requires proof of the same elements as an express contract.  The difference between the two is that "in implied-in-fact contracts the parties' meeting of the minds is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that the contract exists as a matter of tacit understanding." Stepp v. Freeman, 694 N.E.2d 510, 514 (Ohio Ct. App. 1997).

Initially, the Court notes that the fact that Allstate accepted premium payments from Plaintiff, without more, is insufficient to establish a waiver or estoppel on the part of Allstate concerning its obligation to insure the house. State Farm Mut. Auto. Ins. Co. v. Ingle, 904 N.E.2d 934, 939 (Ohio Ct. App. 2008).  Here, although Allstate accepted premium payments from Plaintiff via Bank of America, as already discussed, Allstate did not have actual or constructive notice of Ralph's death or that the premiums were in fact being paid by Plaintiff. Therefore, Allstate's acceptance of the premium payments in the ordinary course of business did not estop it from denying

19

coverage.  <u>Id.</u>

It is true, as the Court of Appeals pointed out, that
Allstate took possession of the home, stored Plaintiff's
salvageable possessions and made an advance payment of expenses
to Plaintiff.  As Allstate correctly argues, however, it also
reserved its ability to investigate Plaintiff's claim without
prejudice to its right to deny coverage under the policy.  Doc.
No. 25-4.  Since Allstate expressly reserved its right to
investigate the claim and deny coverage, the only logical
conclusion is that there was no agreement between the parties for
a contract of insurance even though Allstate did take some
actions consistent with such an agreement.  Nevertheless, if an
insurance company gives the insured notice of its reservation of
rights, as Allstate did here, it may in good faith undertake such
actions without waiving any defenses it may have under the
policy.  <u>See</u>, <u>e.g.</u>, <u>Turner Liquidating Co. v. St. Paul Surplus
Lines Ins. Co.</u>, 638 N.E.2d 174, 178 (Ohio Ct. App. 1994)("A
liability insurer which assumes and conducts the defense of an
action brought against the insured with knowledge of facts taking
the accident or injury outside the coverage of the policy, and
without disclaiming liability or giving notice of a reservation
of its right to deny coverage, is thereafter precluded in an
action upon the policy from setting up the defense of
noncoverage.")(quoting 59 Ohio Jurisprudence 3rd 94, Insurance,

20

Section 1047 (1985)).

Plaintiff's reliance on <u>Lambert v. Connecticut Fire Ins. Co.</u>, 197 N.E. 349 (1934), to establish an implied-in-fact contract is inapt.  In <u>Lambert</u>, a garment wholesaler wanted to purchase a fire insurance policy.  The wholesaler, however, did not want the policy to be issued in its company name because it did want to its customers to know that it was also retailing products that competed against them.  With the knowledge and consent of the insurance company's representative, the policy was issued in the name of the wholesaler's store manager, who was not the sole owner of the store.  Later, there was a fire that destroyed the wholesaler's stock.  The insurance company denied the claim on the grounds that the insured party was the store manager and not the wholesaler.  The court of appeals ruled, however, that the wholesaler's loss was covered although the policy was issued in the store manager's name.  <u>Id.</u> at 349-52.

<u>Lambert</u> is distinguishable from this case, however, because the basis for the court's ruling was that in issuing the policy, the insurance company's representative knew that the wholesaler was the intended insured of the policy.  Under agency principles, the court imputed the agent's knowledge to the insurance company and held that the wholesaler was entitled to coverage under an oral contract for insurance.  <u>Id.</u> at 351-52. Thus, <u>Lambert</u> is first and foremost an agency case – the

21

insurance company was deemed to have actual knowledge of the intended insured through its agent.  Since <u>Lambert</u> is an agency case, it has no application in this implied-in-fact contract case.  But even if it did have some application, one crucial fact from <u>Lambert</u> is missing in this case - there is no evidence that any agent of Allstate knew that it was dealing with Plaintiff as the intended insured under the policy instead of Ralph.  Thus, <u>Lambert</u> does not save Plaintiff from summary judgment on his implied-in-fact contract claim.

Accordingly, Allstate's motion for summary judgment on this claim is well-taken and is **GRANTED.**

<u>Conclusion</u>

For the reasons stated above, Allstate's motion for summary judgment is well-taken and is **GRANTED.**  Plaintiff's motion for default judgment on Count Five is not well-taken and is **DENIED.**  The complaint is **DISMISSED WITH PREJUDICE.  THIS CASE IS CLOSED.**


**IT IS SO ORDERED**

Date_November 14, 2011_            _____s/Sandra S. Beckwith_____
                                        Sandra S. Beckwith
                               Senior United States District Judge


22