NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0142n.06

No. 11-4347

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DOUGLAS C. RAMSEY,

    Plaintiff-Appellant,

v.

ALLSTATE INSURANCE COMPANY,

    Defendant-Appellee.

FILED
Feb 08, 2013
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

/

Before:    KEITH, MERRITT, and MARTIN, Circuit Judges.

    BOYCE F. MARTIN, JR., Circuit Judge. This is a case about insurance coverage. Douglas Ramsey's house was destroyed by fire. Douglas inherited the house from his father, Ralph Ramsey, upon Ralph's death. During his life, Ralph had maintained a homeowner's insurance policy on the house with Allstate Insurance Company. After the fire, Allstate denied Douglas coverage because the insurance policy was not in Douglas's name at the time of the fire; rather, the policy was still in Ralph's name. Douglas sued for coverage. The district court granted summary judgment to Allstate, concluding that there was no express contract between Douglas and Allstate. We affirmed that decision, but we remanded the case with instructions for the district court to consider (1) whether Allstate had constructive notice of either Ralph's death or that title to the house had transferred, and was thus estopped from denying coverage on the basis that the insurance policy remained in Ralph's name; and (2) whether there was a contract implied in fact between Douglas and Allstate. The

No. 11-4347
*Ramsey v. Allstate Ins. Co.*
Page 2

district court granted summary judgment to Allstate on both of these issues, and denied Douglas's motion for default judgment. Douglas appeals these decisions. We **AFFIRM** on the constructive notice issue and we **REVERSE** on the contract implied in fact issue because there are contested material facts.

I.

We recited the facts of this case in our prior opinion in this case, *Ramsey v. Allstate Ins. Co.*, 416 F. App'x 516 (6th Cir. 2011):

> Douglas's father, Ralph Ramsey, purchased homeowner's insurance from Allstate in September of 1993 and renewed the policy annually until his death in August of 2002. Bank of America had a mortgage on the house and paid the insurance premiums from Ralph's account. After Ralph died, Bank of America continued to pay the insurance premiums, but did so from Douglas's account. Allstate continued to renew the insurance coverage but never named Douglas on the policy. The policy states in pertinent part:
>
> **Policy Transfer**
>
> You may not transfer this policy to another person without our written consent.
>
> **Continued Coverage After Your Death**
>
> If you die, coverage will continue until the end of the premium period for:
>
> 1) your legal representative while acting as such, but only with respect to the residence premises and property covered under this policy on the date of your death.
>
> 2) an insured person, and any person having proper temporary custody of your property until a legal representative is appointed and qualified.

No. 11-4347
*Ramsey v. Allstate Ins. Co.*
Page 3

> There is no evidence that Douglas ever directly notified Allstate of Ralph's passing. Douglas alleges that he informed Bank of America and Bank of America continued to pay the insurance premiums, renewing the policy in Ralph's name.
> After the fire on June 26, 2008, Allstate took possession of the home, inspected it, and boarded it up. Allstate put Douglas's salvageable property in storage and paid him $500 to cover initial expenses. However, on July 20, Allstate sent Douglas a letter stating that it would not cover the loss from the fire. There are no allegations of any improprieties, but Allstate discovered that the policy was still only in Ralph's name. Therefore, Allstate determined that it had no obligation to cover the loss to what was now Douglas's house.
> After Allstate denied coverage, the policy automatically renewed once again in September of 2008. However, Allstate argues that this renewal, after it had learned of Ralph's death, was inadvertent. Allstate canceled the policy when it discovered the error.
> The district court granted Allstate's motion for summary judgment holding that under the terms of the insurance contract, coverage ceased at the end of the premium period following Ralph's death. The district court found that Douglas did not notify Allstate of Ralph's death before the fire and, even if he had provided notice, the loss is still not covered because the policy is not transferrable.

*Ramsey*, 416 F. App'x. at 518-520. We affirmed the district court's judgment that "Douglas did not have an express insurance contract with Allstate." *Id.* at 518. But we remanded, instructing the district court to consider whether Allstate had constructive notice of either Ralph's death or that the title to the house had transferred. We also instructed the district court to consider on remand whether a contract implied in fact arose from the parties' actions. *Id.*

After our mandate issued, Douglas filed an amended complaint in which he added a fifth cause of action to the complaint, alleging that (1) Allstate had constructive notice of Ralph's death or that title to the house had transferred, and was thus estopped from denying coverage on the basis that the insurance policy was in Ralph's name; and (2) that a contract implied in fact had arisen from the parties' actions. Allstate moved to strike counts one through four of the complaint; the district

No. 11-4347
*Ramsey v. Allstate Ins. Co.*
Page 4

court granted this motion on the grounds that these counts were redundant and immaterial in light of our opinion. Allstate did not file an answer to Douglas's amended complaint, but filed a motion for summary judgment on the fifth count in the amended complaint. Douglas then filed a motion for default judgment as to the fifth count.

The district court concluded that Allstate did not have constructive notice of either Ralph's death or that title to the house had transferred, and thus that Allstate was not estopped from denying coverage. The district court also found that no contract implied in fact arose from the parties' actions. Here we disagree. Douglas raises several issues in his amended complaint that are contested facts. Thus summary judgment on this issue was erroneous. Nevertheless, the district court granted Allstate summary judgment on both issues, and denied Douglas's motion for default judgment.

II.

We review a district court's grant of summary judgment de novo. *Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 443 (6th Cir. 2012). A grant of summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"Because federal jurisdiction here is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332, and because the parties ask this Court to interpret [Ohio law], we apply Ohio

No. 11-4347
*Ramsey v. Allstate Ins. Co.*
Page 5

substantive law to the state-law claims presented." *Beverage Distribs., Inc. v. Miller Brewing Co.*, 690 F.3d 788, 792 (6th Cir. 2012). " If the [Ohio] Supreme Court has not yet addressed the issue presented, [this Court] must predict how it would rule, by looking to 'all relevant data,' including state appellate decisions." *Id.* (alterations in original).

    A.    Constructive Notice

Under Ohio law, "constructive notice is that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice or knowledge." *In re Fahle's Estate*, 90 Ohio App. 195, 197-98, 105 N.E.2d 429, 431 (Ohio Ct. App. 1950). After Ralph died, his estate was probated, an obituary for Ralph was published in local newspapers, and the title to the house was transferred to Douglas; these facts, and filings documenting these facts, are a matter of public record. There is no evidence that Allstate or any of its agents knew of, or read, these documents. Douglas contends that, because these facts are a matter of public record, Allstate had constructive notice that Ralph had died or that Ralph no longer owned the house. Douglas argues that such constructive notice estops Allstate from denying coverage on the basis that it did not know Ralph died or no longer owned the house.

As the Ohio Court of Appeals stated in *In re Fahle's Estate*, "in the absence of evidence that a creditor of a decedent has read a notice of the death or the appointment of an administrator of a decedent, proof of publication of such notice is insufficient to establish 'actual notice' thereof." *Id.* at syllabus ¶ 3. In *In re Fahle's Estate*, the Ohio Court of Appeals did not address whether proof of publication of such information is constructive notice of "the death or the appointment of an administrator"; there does not seem to be an Ohio case that directly addresses this question. For two reasons, we conclude that such publication does not give Allstate constructive notice. First, Douglas

No. 11-4347
*Ramsey v. Allstate Ins. Co.*
Page 6

points to no case or law that imposes upon an insurance company constructive notice of the death of one of its insureds upon publication of a death notice.[1]  Second, such a hypothetical rule would require Allstate to comb public records every day and compare death notices and estates in probate to its list of policyholders to protect itself in circumstances similar to those here.  As the district court notes, if there were such a rule in Ohio, the outcome in *In re Fahle's Estate* would have been different: the creditor would have been considered to have notice of the appointment upon publication of the notice.

For similar reasons, we conclude that, under Ohio law, the filing of house title transfer documents is insufficient to establish Allstate's constructive notice of the fact that Ralph had died and no longer owned the house.  Though the parties have not presented an Ohio case that directly addresses this issue, the Ohio Court of Appeals held, in an unpublished decision, that a purchaser of land does not have constructive notice of an encumbrance on his land unless the encumbrance is recorded in the purchaser's chain of title.  *Ohio Tpk. Comm'n v. Spellman Outdoor Adver. Servs., LLC*, No. E-09-038, 2010 WL 1511707, at *5 (Ohio Ct. App. Apr. 16, 2010). The Ohio court in *Spellman* determined that imposing constructive notice of an encumbrance on the prospective purchaser of land, without requiring a recording and common chain of title, is "an intolerable burden." *Id.* at *5 (internal quotation marks omitted).  It would be an even greater burden to impose a requirement that an insurer who has no interest in purchasing the real estate owned by its

---

[1] In his briefs on appeal, Douglas does not cite or rely upon *Security Trust Co. v. Ford*, 79 N.E. 474 (Ohio 1906).  However, in the district court opinion from which this appeal is taken, the district court discusses the case at length.  We agree with the district court, for the reasons stated in its opinion, that the Ohio Supreme Court's statement in Ford that "a public record is constructive notice of what the record may properly contain," *id.* at 477, is dicta and thus inapplicable here.

No. 11-4347
*Ramsey v. Allstate Ins. Co.*
Page 7

policyholders, and certainly no common chain of title, constantly search for title transfers of the real estate covered by its policies. Douglas also argues that Ohio Revised Code § 5301.25(A) imposes constructive notice upon Allstate of the title transfer; however, that subsection makes no mention of notice or constructive notice—it merely provides that land deeds must be recorded. For the same reason that Ohio does not burden an insurer by imposing on it constructive notice of the death of its policyholders based only on the publication of a notice of death, we also hold that Ohio law does not burden an insurer by imposing on it constructive notice of the transfer of title of a property covered by one of its policies based only on the recording of the transfer of title.

  B.  Contract Implied in Fact

Douglas next argues that the district court erred in failing to find that a contract implied in fact existed between him and Allstate. Under Ohio law, "the existence of express or implied-in-fact contracts . . . hinge[s] upon proof of all of the elements of a contract. Express contracts diverge from implied-in-fact contracts in the form of proof that is needed to establish each contractual element." *Stepp v. Freeman*, 694 N.E.2d 510, 514 (Ohio Ct. App. 1997) (citation omitted). "[I]n implied-in-fact contracts the parties' meeting of the minds is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that the contract exists as a matter of tacit understanding." *Id.* "To establish a contract implied in fact a plaintiff must demonstrate that the circumstances surrounding the parties' transaction make it reasonably certain that an agreement was intended." *Id.*

After Ralph's death and prior to the fire, Allstate accepted premium payments from Bank of America on the policy, and renewed the policy each year, but Allstate claims it did so without

No. 11-4347
*Ramsey v. Allstate Ins. Co.*
Page 8

knowledge that Ralph had died. There are facts in the record, however, that, when viewed in the light most favorable to Douglas, indicate that Allstate knew that Ralph died in 2002. For example, Douglas attached to his memorandum in opposition to Allstate's first motion for summary judgment an excerpt from a transcription of a recorded phone call he had with Heather Stone, an Allstate representative. The phone call took place on June 27, 2008, after the fire. According to the transcript, Stone stated "[n]ow I see here that you have car insurance that was, that ended in 2002[,]" and then asked "[w]as that your father's car insurance?" Douglas responded "yes[.]" Stone asked Douglas who cancelled Ralph's insurance, but he told her he could not remember. Also, in an affidavit attached to Douglas's memorandum in opposition to Allstate's first motion for summary judgment, Douglas avers that "Heather [Stone] told me Allstate cancelled my Dad's automobile insurance when my Dad died in 2002 and she was looking at the cancellation records during our conversation." A reasonable fact-finder could determine that Allstate cancelled Ralph's car insurance in 2002 after receiving notice that Ralph had died, and that its continuation of the premium payments constituted a contract implied in fact with Douglas. We believe that there are enough contested facts to deny summary judgment on the implied-in-fact contract claim.

III.

For these reasons, the judgment of the district court is **AFFIRMED** in part and **REVERSED** in part.

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: February 08, 2013

Mr. Charles Franklin Hollis III
Benjamin, Yocum & Heather
300 Pike Street
Suite 500
Cincinnati, OH 45202

Mr. Anthony J. Iaciofano
Benjamin, Yocum & Heather
300 Pike Street
Suite 500
Cincinnati, OH 45202

Mr. Robert K. Roeller
Roeller & Roeller
1029 Main Street
Cincinnati, OH 45202-0000

Re: Case No. 11-4347, *Douglas Ramsey v. Allstate Insurance Company*
Originating Case No. : 1:09-CV-207

Dear Counsel,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Michelle M. Davis
Case Manager
Direct Dial No. 513-564-7025

cc:   Clerk of the U.S. District Court for the Southern District of Ohio

Enclosure

Mandate to issue